1
2
3
4
5
6
7
8                            UNITED STATES DISTRICT COURT
9                         FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11    ANTHONY BOBADILLA,                            No.  2:18-cv-1778 JAM KJN P
12                      Plaintiff,
13          v.                                      FINDINGS AND RECOMMENDATIONS
14    GARY KNIGHT,
15                      Defendant.
16

17          Plaintiff is a state prisoner, proceeding without counsel.  On June 19, 2018, this action was

18   removed from the Amador County Superior Court.  Defendant's motion for summary judgment is

19   fully briefed.  As discussed below, the undersigned recommends that defendant's motion be

20   granted on the ground that defendant is entitled to qualified immunity.

21   I.  Plaintiff's Verified Complaint

22          Plaintiff alleges that on May 21, 2017, defendant Sgt. Knight retaliated against plaintiff

23   based solely on plaintiff's right to free speech.  (ECF No. 1 at 6-61.)  Specifically, while locked in

24   his cell at Mule Creek State Prison, plaintiff and other inmates verbally protested the beating of

25   another inmate.  Plaintiff verbally objected when he witnessed prison guards beat another inmate

26   who was shackled by his ankles and his wrists, and as the guards dragged the inmate into the sally

27   port, plaintiff witnessed a guard kick the inmate in the face like a soccer ball.  Plaintiff yelled for

28   defendant Knight to "do something," "don't just stand there," "stop the excessive use of force,"

and "that is enough!"  (ECF No. 1 at 11.)  Subsequently, plaintiff and his cell mate were extracted

from their cell by threat of pepper spray, as was another inmate, and then their personal property

was damaged and thrown away.  They were handcuffed and taken to a temporary holding cell

where plaintiff alleges that defendant Knight told them they were going to administrative

segregation for investigation for conspiracy to commit murder on a peace officer.  (ECF No. 1 at

13.)  Subsequently, defendant Knight allegedly falsified charges in a rules violation report,

charging plaintiff with inciting a riot in violation of California Code of Regulations, title 15

§ 3005(d)(2), that resulted in plaintiff being housed in administrative segregation, losing his job,

his legal books and half of his legal materials as well as other inmate's legal materials, and

ultimately resulted in his adverse transfer to a different prison.  The rules violation report was

subsequently dismissed based on a due process violation.  (ECF No. 1 at 19, 46.)

Plaintiff also raises state tort claims against defendant Knight for defamation (slander and

libel), false imprisonment, and malicious prosecution.  (ECF No. 1 at 32, 37-42).  Plaintiff

affirmatively pled compliance with applicable claims statutes.  (ECF No. 1 at 8.)

II.  <u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate when it is demonstrated that the standard set forth in

Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

---

[1]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
standard for granting summary judgment remains unchanged."

only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

1   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

2   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

3   amendments).

4          In resolving a summary judgment motion, the court examines the pleadings, depositions,

5   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

6   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

7   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

8   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

9   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

10  predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

11  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

12  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

13  some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

14  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

15  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

16         By notice filed July 12, 2019 (ECF No. 31-3), plaintiff was advised of the requirements

17  for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See

18  Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d

19  409 (9th Cir. 1988).

20  III.  The Civil Rights Act

21         The Civil Rights Act under which this action was filed provides as follows:

22         Every person who, under color of [state law] . . . subjects, or causes
           to be subjected, any citizen of the United States . . . to the deprivation
23         of any rights, privileges, or immunities secured by the Constitution .
           . . shall be liable to the party injured in an action at law, suit in equity,
24         or other proper proceeding for redress.

25  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

26  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

27  Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

28  liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

4

affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

IV.  Undisputed Facts[2] ("UDF")

1.  Plaintiff is a state prisoner in the custody of the California Department of Corrections ("CDCR"), and was housed at Mule Creek State Prison ("MCSP") at all relevant times herein.

2.  The CDCR is a Department of the State of California and therefore a public entity. CDCR has jurisdiction over MCSP.

3.  During all times relevant herein, defendant Knight was a Correctional Sergeant at MCSP.  Defendant Knight's duties included the supervision and coordination of the work of assigned correctional officers in the safe custody, discipline, and welfare of inmates or parolees on an assigned watch or in a major area, as well as ensuring institutional and personnel safety, and informing others of events, verbally and written, such as authoring rules violation reports.

4.  At about 12:31 p.m., on May 21, 2017, a Code One transmission of "Attack on Staff, Building 5," was issued via the institutional radio.  Officer Arellano was assaulted by inmate Brian Jones; nonparty Officer Arellano, bleeding from his face, head and neck, was trying to remove himself from the incident.

5.  Numerous Code Responders attempted to physically restrain inmate Jones, who continued to assault Officer Arellano.

6.  Defendant Knight used force to get inmate Jones to loosen his grip on Officer Arellano.  Such force was effective, allowing defendant Knight to pull Officer Arellano from inmate Jones' grip.

////

---

[2]  For purposes of summary judgment, the undersigned finds these facts are undisputed.

7.   Defendant Knight escorted Officer Arellano out of the unit for medical attention and then returned to the scene of the incident.

8.   The Code Responders were using various forms of physical force to restrain inmate Jones.  Inmate Jones was subsequently transported off the facility.

9.   At about 12:31 p.m., plaintiff began yelling out of his cell door.  (Pl.'s Dep. at 30:10-14; ECF No. 1, ¶ 20.)  The parties dispute what words plaintiff yelled.[3]

10.   Plaintiff contends he had a free speech right to yell out of his cell door.  Defendant Knight deemed plaintiff's actions a threat to the safety and security of the institution and staff.  As a result, plaintiff was removed from his cell and escorted to the Facility A program office, along with other inmates.  (Pl.'s Dep. at 51, 53-57.)  Plaintiff argues he was removed from his cell and placed in administrative segregation in retaliation for the words plaintiff yelled.

11.   Defendant Knight informed nonparty Lieutenant Bona about plaintiff's conduct and the reason for plaintiff's removal from the facility.  Plaintiff was not present during this exchange.  (Pl.'s Dep. at 71-72.)  Lt. Bona issued plaintiff an administrative segregation placement notice.  Plaintiff was then housed in administrative segregation.

12.   Subsequently, defendant Knight authored a rules violation report ("RVR"), issued to plaintiff on May 29, 2017, and charged plaintiff with inciting a riot.  Plaintiff contends the RVR was issued in retaliation for plaintiff yelling out his cell door.

13.   Defendant Knight was not the hearing officer at the hearing on plaintiff's RVR.  (Pl.'s Dep. at 99, 105.)

////

---

[3]  Plaintiff conceded that it was pretty loud in the unit during the altercation.  (Pl.'s Dep. at 51.)  In his verified complaint, plaintiff states that he and numerous other inmates verbally protested the beating of inmate Jones.  (ECF No. 1 at 11.)  Specifically, plaintiff yelled for defendant Knight to "do something," "Don't just stand there," "Stop the excessive use of force," and "that is enough!"  (ECF No. 1 at 11, ¶ 20.)  In his deposition, plaintiff claimed that he "was yelling to stop the excessive use of force on Brian [Jones]."  (Pl.'s Dep. at 30.)  On the other hand, defendant Knight declares that he heard plaintiff and inmate Hearns yelling, "Fuck the cops," "You will all go down!," "Kill the cops," and other phrases.  (ECF No. 31-2 at 49.)  Defendant declares such yelling was "an attempt to get other inmates who were housed in Facility A05 to assault correctional staff."  (Id.)

14.  Defendant Knight was not part of the review process or institution classification committee that reviewed the need to retain plaintiff in administrative segregation.  (Pl.'s Dep. at 80-81, 87-88; ECF No. 1 at ¶¶ 29, 34-35, 37.)

15.  Defendant Knight was not part of the institution classification committee that transferred plaintiff or the classification staff representative that endorsed the action.  (Pl.'s Dep. at 103-06; ECF No. 1 at ¶¶ 35, 46.)

16.  Plaintiff does not contend that defendant Knight stole or took plaintiff's books or property.  (Pl.'s Dep. at 72, 76, 99.)

17.  Plaintiff's first administrative grievance related to plaintiff's allegations herein was submitted on June 6, 2017.  (ECF No. 1 at ¶ 32; Pl.'s Dep. at 86.)

V.  Plaintiff's Retaliation Claims

A.  Legal Standards:  First Amendment Retaliation

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).  It is well-settled that § 1983 provides a cause of action against prison officials who retaliate against inmates for exercising their constitutionally protected rights.  Pratt v. Rowland, 65 F.3d 802, 806 n.4 (9th Cir. 1995) ("[R]etaliatory actions by prison officials are cognizable under § 1983.")  The elements of a prisoner's First Amendment retaliation claim are:  (1) adverse action by a state actor; (2) because of; (3) the prisoner's protected conduct; (4) the adverse action chilled the prisoner's exercise of First Amendment rights; and (5) the adverse action did not reasonably advance a legitimate correctional goal.  See Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2012); Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  As to the third element, filing a complaint or grievance is constitutionally protected.  Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  As to the fifth element, the prisoner must establish "that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline."  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam ).

/////

7

1    B. <u>Defendant's Arguments</u>

2          Defendant moves for summary judgment on two grounds.  First, defendant argues that

3    plaintiff cannot establish the necessary elements of a retaliation claim within the prison context

4    because defendant did not retaliate against plaintiff, and plaintiff was not engaged in protected

5    conduct, and defendant's actions in ordering plaintiff and other inmates removed from the unit, in

6    which an attempted murder on a correctional officer occurred, furthered legitimate correctional

7    goals -- ensuring order and preventing additional violence against staff.  Because the alleged

8    adverse actions allegedly stemmed from plaintiff's yelling, plaintiff's reliance on <u>Rhodes</u>, 408

9    F.3d at 567, is unavailing because in <u>Rhodes</u> the court found an inmate had a right to file and

10   pursue prison grievances and civil litigation, not to verbally criticize or tell a prison sergeant how

11   to do his job.  (ECF No. 31-1 at 7.)  But even assuming plaintiff could demonstrate the initial

12   elements of a retaliation claim, allowing inmates to verbally criticize or yell during the assault of

13   a correctional officer and use of force incident could further agitate an already volatile situation

14   and would not be prudent correctional management.  Moreover, processes were available for

15   plaintiff to challenge his placement in administrative segregation and the RVR, and his

16   subsequent challenges were not addressed by defendant, but by prison staff not involved in the

17   incident at issue here.

18          Second, defendant is entitled to qualified immunity because it is not clearly established

19   that in the prison context verbal complaints can form the basis of a retaliation claim, and case law

20   does not address an incident where an inmate yelled at prison staff.  Defendant argues that in both

21   <u>Ahmed v. Ringler</u>, No. 2:13-cv-1050 MCE DAD P, 2015 WL 502855 (E.D. Cal. Feb. 5, 2015),

22   and <u>Christ v. Blackwell</u>, No. 2:10-cv-0760-EFB P, 2016 WL 4161129 (E.D. Cal. Aug. 3, 2016),

23   the prisoner's retaliation claims were dismissed based on qualified immunity.  (ECF No. 31-1 at

24   9.)  "To date, neither the Supreme Court nor the Ninth Circuit has held that mere oral complaints

25   by a prisoner can form the basis of a retaliation claim within the prison context."  <u>Ahmed</u>, 2015

26   WL 502855, at *7 (noting district court cases have found both that an oral complaint can be the

27   basis for a retaliation claim and the opposite); <u>see also</u> <u>Christ</u>, 2016 WL 4161129, at *8-9.

28   Because there is no robust consensus of cases finding that an oral complaint by a prisoner can

8

1   form the basis of a retaliation claim, defendant argues that even assuming the truth of plaintiff's

2   allegations, defendant violated no clearly established law and is entitled to qualified immunity.

3          C.  Plaintiff's Opposition

4          Plaintiff counters that defendant handcuffed plaintiff and placed him in administrative

5   segregation, then falsified an RVR, solely in retaliation for plaintiff exercising his right to free

6   speech, relying on Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) ("The First Amendment

7   forbids prison officials from retaliating against prisoners for exercising the right to free speech.")

8   (ECF No. 43 at 5.)  The false RVR resulted in plaintiff losing his job, legal books and materials,

9   and his ultimate adverse transfer.

10          Plaintiff denies defendant is entitled to qualified immunity, arguing that it was clearly

11   established that "the prohibition against retaliatory punishment is clearly established law,"

12   quoting Pratt, 65 F.3d at 806, and also relying on Rhodes, 408 F.3d at 567-68, and Brodheim, 584

13   F.3d at 1269.  (ECF No. 43 at 7-9.)  Plaintiff points to Williams v. Amay, 1:17-cv-1332 AWI

14   EPG, 2018 WL 4207027 (E.D. Cal. Sept. 4, 2018), where the magistrate judge discussed relevant

15   district court cases falling into four major categories and found "that the existing precedent in this

16   district and the other districts in California had placed beyond debate in early 2017 that verbal

17   conduct is protected conduct for purposes of a retaliation claim."  Id. at *9.  Plaintiff then focuses

18   on three Eastern District of California cases included in the review of cases evaluated by the

19   magistrate judge in Williams. 2018 WL 4207027, at *7, arguing plaintiff's verbal protests were

20   protected under the First Amendment.  (ECF No. 43 at 9-11.)

21          D.  Defendant's Reply

22          Defendant contends that plaintiff fails to demonstrate that yelling at correctional staff

23   during a use of force incident on May 21, 2017, where a correctional officer was assaulted and

24   seriously injured, constitutes protected conduct, and that plaintiff's removal from the unit was not

25   related to legitimate safety concerns.  Plaintiff's reliance on Rhodes, 408 F.3d at 567, is

26   unavailing because plaintiff's first administrative appeal was filed on June 6, 2017, and therefore

27   could not have formed the basis of plaintiff's retaliation claim based solely on verbal complaints.

28   ////

1    Defendant contends that even if plaintiff could establish that yelling was protected

2    conduct, plaintiff fails to show that defendant's actions in removing plaintiff from the unit and

3    placing him in administrative segregation were not to preserve institutional security, a legitimate

4    penological purpose.  Correctional staff are responsible for ensuring institutional safety, "and

5    removing potential antagonists from a volatile situation furthers safety and security."  (ECF No.

6    46 at 2.)  Also, plaintiff fails to demonstrate that defendant was sufficiently connected or linked to

7    the alleged adverse actions that occurred after plaintiff was placed in administrative segregation.

8    Further, defendant argues that he is entitled to qualified immunity because it is not clearly

9    established that verbal complaints by a prisoner are protected conduct, even in the retaliation

10   context.  (ECF No. 46 at 3-4.)  Plaintiff's reliance on Williams is unavailing because the district

11   court did not adopt the magistrate judge's findings and recommendations.  Williams v. Amay,

12   2019 WL 6728054 (E.D. Cal. 2018).  In light of later court findings cited in defendant's motion,

13   and the lack of Supreme Court or Ninth Circuit precedents, defendant contends that the issue

14   presented in this case is not clearly established or beyond debate, and defendant should be granted

15   qualified immunity.

16   VI.  Qualified Immunity

17   As discussed below, the undersigned is persuaded that there is no clearly established

18   Supreme Court or Ninth Circuit authority finding that a prisoner's verbal complaints concerning

19   matters not related to inmate grievances or litigation constitute protected conduct.  Therefore, the

20   undersigned declines to specifically address the substantive elements of plaintiff's retaliation

21   claim, because defendant is entitled to qualified immunity.

22   A.  Legal Standards

23   Qualified immunity applies when an official's conduct does not violate clearly established

24   statutory or constitutional rights of which a reasonable person would have known.  White v.

25   Pauly, 137 S. Ct. 548, 551 (2017).  Officers are entitled to qualified immunity under § 1983

26   unless (1) the officers violate a federal a federal statutory or constitutional right, and (2) the

27   unlawfulness of their conduct was "clearly established at the time."  District of Columbia v.

28   Wesby, 138 S. Ct. 577, 589 (2018); White, 137 S. Ct. at 551.  "Clearly established" means that

1    the statutory or constitutional question was "beyond debate," such that every reasonable official

2    would understand that what he is doing is unlawful.  See Wesby, 138 S. Ct. at 589; Vos v. City of

3    Newport Beach, 892 F.3d 1024, 1035 (9th Cir. 2018).  This is a "demanding standard" that

4    protects "all but the plainly incompetent or those who knowingly violate the law."  Wesby, 138 S.

5    Ct. at 589 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).  To be "clearly established," a rule

6    must be dictated by controlling authority or by a robust consensus of cases of persuasive

7    authority.  Wesby, 138 S. Ct. at 589; see also Perez v. City of Roseville, 882 F.3d 843, 856-57

8    (9th Cir. 2018) (noting that Ninth Circuit precedent is sufficient to meet the "clearly established"

9    prong of qualified immunity); Hamby v. Hammond, 821 F.3d 1085, 1095 (9th Cir. 2016)

10   ("[D]istrict court decisions -- unlike those from the courts of appeals -- do not necessarily settle

11   constitutional standards or prevent repeated claims of qualified immunity.").  In examining

12   whether a rule/right is clearly established, courts are to define the law to a "high degree of

13   specificity," and not "at a high level of generality."  Wesby, 138 S. Ct. at 590; Kisela v. Hughes,

14   138 S. Ct. 1148, 1152 (2018).  The key question is "whether the violative nature of particular

15   conduct is clearly established" in the specific context of the case.  Vos, 892 F.3d at 1035 (quoting

16   Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)).  Although it is not necessary to identify a case that

17   is "directly on point," generally the plaintiff needs to identify where an officer acting under

18   similar circumstances was held to have violated federal right.  Wesby, 138 U.S. at 577; Vos, 892

19   F.3d at 1035; Felarca v. Birgeneau, 891 F.3d 809, 822 (9th Cir. 2018); Shafer v. City of Santa

20   Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017).

21         B.  Discussion

22         Plaintiff initially argues that defendant is not entitled to qualified immunity because the

23   prohibition against retaliatory punishment is clearly established law.  Plaintiff is correct that,

24   generally speaking, retaliation against prisoners for engaging in protected conduct is clearly

25   established.  But the key here is how "protected conduct" is defined.  The Ninth Circuit cases

26   relied upon by plaintiff involved or were related to the filing of written grievances.  (ECF No. 43

27   at 8.)  Importantly, the context of plaintiff's claim differs because his allegations, taken as true, do

28   not involve the filing of administrative grievances or lawsuits, but rather are solely based on

1  plaintiff's verbal complaints directed to correctional officers' use of force against someone else,

2  not in the context of threatening to file a grievance or lawsuit, or complaining about an officer's

3  alleged improper action toward plaintiff.[4]

4      Plaintiff relies on Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003), to support his

5  contention that the First Amendment forbids prison officials from retaliating against prisoners for

6  exercising the right to free speech.  (ECF No. 43 at 5.)  First, this court is not bound by rulings

7  from the Eleventh Circuit.  Rather, as noted above, only rulings by the U.S. Supreme Court and

8  the Ninth Circuit provide controlling authority clearly establishing the alleged constitutional

9  violation.  Wesby, 138 S. Ct. at 589; Perez, 882 F.3d at 856-57.  "Neither the Ninth Circuit nor

10  the supreme Court has decided whether a prisoner's verbal complaints constitute protected

11  conduct."  Torres v. Arellano, No. 1:15-cv-0575 DAD MJS (PC), 2017 WL 1355823, at *13

12  (E.D. Cal. Mar. 24, 2017) (collecting cases).  Second, even assuming Farrow had persuasive

13  value, which it would not,[5] the Eleventh Circuit's pronouncement that "[t]he first Amendment

14  forbids prison officials from retaliating against prisoners for exercising the right of free speech,"

15  is too broad to define the constitutional right at issue as required by current Supreme Court

16  authority.  See Wesby, 138 S. Ct. at 590.  Third, the facts of this case do not constitute one of the

17  "rare" instances where the constitutional violation is so obvious that no case that is closely on

18  point is necessary.  See Wesby, 138 S. Ct. at 590.  In the absence of cases that are similar to the

19  facts in this case, defendant is entitled to qualified immunity because plaintiff's right to free

20  ////

---

21  [4]  For example, on October 6, 2017, the Ninth Circuit denied qualified immunity as it related to

22  the prisoner's threats to file a civil suit because "[t]he district court should have recognized [ ]
   that the form of the complaints -- even if verbal, let alone, as here, written -- is of no

23  constitutional significance, and that threats to sue fall within the purview of the constitutionally
   protected right to file grievances."  Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017), citing

24  Hargis v. Foster, 312 F.3d 404, 411 (9th Cir. 2002).)

25  [5]  In Farrow, the court did not address the issue of whether the prisoner's right to free speech was

26  clearly established because the defendants did not raise such issue in the district court, which only
   addressed whether there had been a constitutional violation.  Id. n.22.  Rather, the appellate court

27  found that summary judgment was properly granted to defendant Nurse Shipman because Farrow
   failed to demonstrate a causal connection between his complaints and Shipman's treatment.

28  Farrow, at 1248-49.

1    speech under the circumstances of this case was not "clearly established."  See id. at 589-90;

2    White, 137 S. Ct. at 551

3         Further, plaintiff relies on the findings and recommendations issued in Williams v. Amay,

4    1:17-cv-1332 AWI EPG, 2018 WL 4207027 (E.D. Cal. Sept. 4, 2018),[6] and district court cases

5    cited therein.  The magistrate judge evaluated district court cases in California, and concluded

6    that such cases "placed beyond debate in early 2017 that verbal conduct is protected conduct for

7    purposes of a retaliation claim."  Id. at *9.  However, as argued by defendant, the district court

8    declined to adopt such findings and recommendations.  Williams v. Amay, 2019 WL 6728054

9    (E.D. Cal. 2018).  Following de novo review, the district court held, inter alia, that Williams

10   failed to state a plausible retaliation claim, but even if he did, the defendants were entitled to

11   qualified immunity because Williams failed to show "that a reasonable official in defendants'

12   place would understand that" providing "medical treatment that complied with the Eighth

13   Amendment albeit not plaintiff's choice of treatment before and after plaintiff engaged in First

14   Amendment protected conduct," was unlawful conduct.  Williams, at *7.  It is apparent from such

15   ruling that the district court was not persuaded that a robust consensus of cases of persuasive

16   authority supported a finding that the First Amendment right to free speech by a prisoner was

17   clearly established.  Similarly, in light of more recent Supreme Court authority defining the

18   contours of qualified immunity, plaintiff's reliance on older district court cases is also unavailing.

19        Here, whether or not plaintiff has established a violation of his First Amendment rights,

20   defendant is entitled to qualified immunity because plaintiff's alleged free speech rights were not

21   clearly established at the time of the May 21, 2017 incident.  Taking plaintiff's allegations as true,

22   that he was verbally protesting how correctional officers were using force in their response to

23   another inmate's assault on a correctional officer, and defendant removed plaintiff from his cell

24   and placed him in administrative segregation and then authored an allegedly false RVR, the

25   _____

26   [6] In Williams, the prisoner identified the protected conduct as (1) requesting Wellbutrin;
     (2) explaining his past experience with other antidepressants to the defendant doctor; and
27   (3) telling the doctor what 15 C.C.R. § 3364.1(a)(5)(G) stated.  Williams, 2019 WL 6728054, at
     *6.  Thus, the Williams case, like the instant case, had nothing to do with the filing of grievances,
28   including a verbal threat to file one.

                                         13

1    undersigned has located no case, and plaintiff has not cited one, that would put a reasonable

2    officer on notice that defendant's actions violated a prisoner's First Amendment right to free

3    speech under these circumstances.  Thus, qualified immunity is appropriate because plaintiff has

4    not shown that a reasonable official in defendant's place would understand that his conduct was

5    unlawful.

6    VII.  Plaintiff's State Law Claims

7           Based on the above recommendations, this court declines to exercise supplemental

8    jurisdiction over plaintiff's state law claims.  See 28 U.S.C. § 1367(c)(3); Ove v. Gwinn, 264 F.3d

9    817, 826 (9th Cir. 2001).  The undersigned recommends that plaintiff's state law claims be

10   dismissed without prejudice.

11   VIII.  Conclusion

12          Accordingly, IT IS HEREBY RECOMMENDED that:

13          1.  Defendant's motion for summary judgment (ECF No. 31) be granted on the ground

14   that defendant is entitled to qualified immunity in connection with plaintiff's retaliation claim;

15          2.  The court should decline to exercise supplemental jurisdiction over plaintiff's state law

16   claims, which should be dismissed without prejudice; and

17          3.  This action be terminated.

18          These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

20   being served with these findings and recommendations, any party may file written objections with

21   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

22   Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

23   filed and served within twenty-one days after service of the objections.  The parties are advised

24   that failure to file objections within the specified time may waive the right to appeal the District

25   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

26   Dated:  July 20, 2020

27

28   /boba1778.msj

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

1